IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHELBY DAVIS,[1] | § | |
| | § | |
| Respondent Below, | § | No. 16, 2024 |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| DEPARTMENT OF SERVICES | § | File No. CN22-03505 |
| FOR CHILDREN, YOUTH, AND | § | |
| THEIR FAMILIES/DIVISION OF | § | Petition No. 22-13834 |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: November 20, 2024
Decided: January 28, 2025

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)     This is an appeal from the Family Court's decision and orders dated December 15, 2023, that terminated Mother's parental rights as to her child born in

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d). This order refers to the appellant as "Mother."

July 2022 (the "Child"). The Family Court's order also terminated the parental rights of the Child's father ("Father"), who filed a separate appeal.[2]

(2) Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mother's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Mother of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Mother of her right to supplement counsel's presentation. Mother did not respond with any points that she wanted to present for the Court's consideration. The Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS") as appellee and the Child's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The Child is the youngest of Mother and Father's four children. Colorado courts terminated Mother's and Father's parental rights as to the two oldest children in 2021 and 2022, following dependency and neglect proceedings with respect to each of those children. In November 2021, Colorado's child protective services agency ("Colorado CPS") requested DFS's assistance with locating and

---

[2] The Court affirmed the termination of Father's parental rights in *Schnell v. Dep't of Servs. for Children, Youth & Their Families*, -- A.3d --, 2025 WL 271785 (Del. Jan. 23, 2025).

retrieving the third-oldest child, who was approximately three months old at the time. Mother and Father had fled to Delaware with that child after Colorado CPS received custody of her. DFS located and returned her to Colorado CPS custody.

(4) Several months later, in July 2022, DFS received a hotline call from the hospital where the Child was born, expressing concerns about Mother's substance use and Father's volatile conduct in the hospital. DFS filed a petition for custody alleging that the Child was dependent or neglected based on the information reported by the hospital, the family's Colorado CPS history, alleged domestic violence, and unstable housing. The Family Court granted DFS's petition for custody, and the Child was placed in a foster home upon discharge from the hospital. The court ordered that the parents' visitation with the Child be supervised. Among other concerns, Colorado CPS reported to DFS that the parents' visitation privileges had been suspended because the parents brought guns and knives to a child welfare office, and Father had threatened to blow up Christiana Hospital when DFS became involved with the Child.

(5) Within two weeks, the Family Court held a preliminary protective hearing. The court found that the Child was dependent and/or neglected, based on the Colorado CPS history, Mother's marijuana use while pregnant, opiate use, domestic violence concerns, and each parent's mental health challenges. The Family

3

Court continued to convene the mandated hearings.[3] After an adjudicatory hearing in August 2022, the Family Court again found that the Child was dependent and/or neglected and would remain in DFS custody.

(6)     In September 2022, the Family Court excused DFS from case planning after finding that the agency had shown by clear and convincing evidence that the parents' parental rights had been involuntarily terminated in a prior proceeding.[4] At further review and dispositional hearings, the court continued to find that the Child was dependent. Among other concerns, the parents had multiple mental health diagnoses but were receiving treatment from the Child's paternal aunt. DFS worked with Colorado CPS through the Interstate Compact on the Placement of Children to place the Child with his maternal grandmother, who was caring for the Child's three siblings.

(7)     On February 3, 2023, the court granted DFS's motion to change the permanency plan from reunification to concurrent goals of reunification and termination of parental rights ("TPR") and adoption. On May 23, 2023, DFS filed

---

[3] *See Kline v. Del. Div. Family Servs.*, 293 A.3d 371, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) (TABLE) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; Del. Fam. Ct. R. Civ. Proc. 212-19)).

[4] *See* 13 *Del. C.* § 1103(d) (providing that DFS "is not required to perform reunification or related services under Chapter 90 of Title 29 when the Court finds by clear and convincing evidence that a ground for termination of a parent's rights exists under paragraphs (a)(2), (4), (7), (8), or (9) of this section," but may "elect, in its sole discretion," to perform such services in those circumstances); *id.* § 1103(a)(7) (establishing "[t]he respondent's parental rights over another child have been involuntarily terminated" as a statutory basis for termination of parental rights).

4

a petition for termination of parental rights. DFS advanced two statutory grounds for terminating Mother's parental rights: (i) failure to plan for the Child's physical needs and emotional development,[5] and (ii) Mother's rights in another child had been involuntarily terminated in an earlier proceeding.[6] The Family Court held a TPR hearing over three days in September and November 2023.

(8) On December 15, 2023, the Family Court granted the petition, terminating Mother's parental rights. The court found that DFS had established, by clear and convincing evidence, that a statutory basis for termination of Mother's parental rights existed under Section 1103(a)(7) because Mother's parental rights as to another child had been involuntarily terminated. Applying the best interest factors,[7] the court found that DSCYF had established, also by clear and convincing evidence, that it was in the Child's best interest to terminate Mother's parental rights.

(9) In this appeal from the Family Court's TPR decision, the Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[8] We review legal rulings *de novo*.[9] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently

---

[5] *Id.* § 1103(a)(5).

[6] *Id.* § 1103(a)(7).

[7] *See id.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

[8] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[9] *Id.* at 440.

supported by the record and are not clearly erroneous.[10] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[11]

(10)   The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[12]  First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[13] Second, if the Family Court finds a statutory basis for termination of parental rights, then the court must determine whether terminating parental rights is in the best interests of the child.[14]  Both of these requirements must be established by clear and convincing evidence.[15]  By requiring that DFS prove both that there was a prior involuntary TPR and that termination of parental rights is in the child's best interest, the "statute protects against an erroneous deprivation of parental rights."[16]

(11)   Mother has not submitted any points for the Court's consideration on appeal.   Mother's counsel represents that he has determined that no arguably appealable issue exists.  After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's determination, as set forth in its decision

---

[10] *Id.*

[11] *Id.*

[12] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[13] *Id.* at 537.

[14] *Id.*

[15] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[16] *Schnell v. Dep't of Servs. for Children, Youth & Their Families*, -- A.3d --, 2025 WL 271785, at *4 (Del. Jan. 23, 2025) (internal quotation omitted).

dated December 15, 2023, that there was clear and convincing evidence that Mother's parental rights to another child had been involuntarily terminated and that termination of Mother's parental rights was in the best interest of the Child. Those conclusions are well supported by the record. Thus, we affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

7